Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for Jumbo*
*Seafood Restaurant, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-90-ELG |
| | ) | (Chapter 11) |
| JUMBO SEAFOOD RESTAURANT, INC. | ) | |
| | ) | |
| Debtor. | ) | |

**<u>MOTION FOR LEAVE TO PAY CERTAIN PRE-PETITION EMPLOYEE WAGES</u>**

Comes now Jumbo Seafood Restaurant, Inc. ("Jumbo Seafood" or the "Debtor"), by and through undersigned proposed counsel, pursuant to Sections 363 and 105 of Title 11 of the United States Code and Federal Rules of Bankruptcy Procedure 6003 and 6004, and moves this Honorable Court for leave to pay certain pre-petition employee wages, and in support thereof state as follows:

**I.     Introduction**

One of the District of Columbia's truly iconic dining institutions, Jumbo Seafood – trading as Tony Cheng's Seafood Restaurant – has played host to Jimmy Carter, Ronald Reagan, George H. W. Bush, Bill Clinton, George W. Bush, every single mayor of the District of Columbia since Marion Barry, foreign royalty, Hollywood's informal royalty, and legions of Washingtonians seeking gourmet cuisine in the heart of Chinatown. The establishment is iconic, not merely for the multiple generations who have passed through its doors, but for Jumbo Seafood's enduring role as a bipartisan meeting place for politicians and families alike. In a city where national affairs are the local industry, the restaurant has endured for decades as a unique cross-section of these two

1

universes, drawing an overlap of the same patrons who otherwise frequent a certain chili establishment on U Street and the corridor of steakhouses on 19th Street.

Yet, for Jumbo Seafood to go on, and for the Debtor to have a genuine chance at reorganization, the famed doors will need to stay open through the Chapter 11 process. And, of particular import to this motion, that means a talented group of employees – ranging from cooks, to waitstaff, to busboys – will need to stay on the job. Their loyalty is abiding but, in the heart of a city that is so often denoted as being the epicenter of capitalism, there is every reason to believe loyalty may falter in the face of unpaid wages.

Thusly, the Debtor seeks to pay the pre-petition wages of thirteen non-insider employees, so an ordinary payroll may be run on April 1, 2024. Jumbo Seafood acknowledges that three of its employees – two equity holders and their son – are assuredly bound to the business by ties that will defy a partial paycheck, and the Debtor accordingly does not seek leave to pay these three insiders for their pre-petition wages. But the other employees – whose ordinary payroll obligations cumulatively amount to less than $5,000.00 (well below the *individual* Section 507 threshold) – are vital to Jumbo Seafood's ongoing operations and should be compensated as such, so as to preempt very real concerns of staff attrition and the decay of workplace morale.

**II.      Standard**

Title 11 of the United States Code (the "Bankruptcy Code") permits a debtor, "after notice and a hearing," to use or sell "property of the estate," outside the ordinary course of business. 11 U.S.C. § 363(b)(1). This Honorable Court, in turn, has broad authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a).

The Federal Rule of Bankruptcy Procedure openly contemplate relief, such as that sought herein, being afforded on an emergency basis upon the commencement of a case, permitting orders to be entered during the first 21 days of a given case, "to the extent that relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.

### III.     Argument: It is Necessary to Pay Employee Wages

The goal of this case – consistent with the outward objectives of the Bankruptcy Code – is to reorganize the Debtor while Jumbo Seafood continues to operate as a going concern in the District of Columbia. A failure to timely pay wages would work demonstrable frustration upon this goal by (i) inflicting undue economic burden upon the entity's workforce; (ii) compromising employee morale in a business that is intensively customer-facing; (iii) risking staff attrition; and (iv) inviting derogatory gossip, and the fomenting of rumors, in the community. Paying these obligations in a timely manner, however, would work only the slightest burden upon the Debtor while equally reinforcing to employees that a Chapter 11 filing is not synonymous with liquidation or demise.

As observed by the United States Bankruptcy Court for the Southern District of New York, a debtor is permitted to expend funds outside the ordinary course of business, provided such be pegged to some articulable business justification:

> A bankruptcy court is empowered pursuant to § 363 of the Bankruptcy Code to authorize a debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. Section 363(b) gives the court broad flexibility in tailoring its orders to meet a wide variety of circumstances. However, the debtor must articulate some business justification, other than mere appeasement of major creditors, for using, selling or leasing property out of the ordinary course of business, before the court may permit such disposition under § 363(b).

*In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing *In re Lionel Corp.*, 722 F.2d 1063, 1069 (2d Cir.1983); *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir.1986); *In re Baldwin–United Corp.*, 43 B.R. 888, 905–906 (Bankr. S.D. Ohio 1984)).

The United States Bankruptcy Court for the District of Colorado has more specifically touched upon the justification for paying the pre-petition wages of employees at the outset of a bankruptcy case:

> The Debtor presented evidence that the failure to pay employees "would seriously undermine the morale and loyalty" of its employees and would jeopardize reorganization efforts. This stands to reason. If employees are not paid, "they will leave." And even if employees remain with the Debtor notwithstanding the non-payment of prepetition wages and benefits, "it is probable that their work would be affected by their loss of income." The Court finds that the failure to pay the Debtor's employees their prepetition wages and benefits likely would jeopardize the Debtor's reorganization process.

*In re Escalera Res. Co.*, 2015 WL 7351396, *4 (Bankr. D. Colo. 2015) (quoting *In re CEI Roofing, Inc.*, 315 B.R. 50, 60 (Bankr. N.D. Tex. 2004); *In re Tusa–Expo Holdings, Inc.*, 2008 WL 4857954, *3 (Bankr. N.D. Tex. 2008)).

Simplifying matters in this case, each of the employee wages proposed to be paid is well below the statutory cap set forth in Section 507(a)(4) of Title 11 of the United States Code and, as such, would give rise to a priority claim if not timely paid. That provision expressly prioritizes claims for "wages, salaries, or commissions … earned by an individual," to the extent that such (i) not exceed $15,150.00 and (ii) the claim accrued "within 180 days before the date of the filing of the petition…" 11 U.S.C. § 507(a)(4).

The Debtor pays wages on a twice-monthly basis, with payment coming on the day next succeeding the end of the pay period. Wages have accordingly been earned but not paid from March 16, 2024 through March 27, 2024 (the petition date herein), representing 2/3 of the current pay period. The gross wages of each non-insider employee, for the past two pay periods, were as follows:

|  | March 15, 2024 | February 29, 2024 |
|---|---|---|
| Employee 1 | $0.00 | $0.00 |
| Employee 2 | $850.00 | $850.00 |
| Employee 3 | $0.00 | $0.00 |
| Employee 4 | $1,950.00 | $1,950.00 |
| Employee 5 | $0.00 | $0.00 |
| Employee 6 | $1,600.00 | $1,600.00 |
| Employee 7 | $0.00 | $0.00 |
| Employee 8 | $500.00 | $500.00 |
| Employee 9 | $720.00 | $660.00 |
| Employee 10 | $480.00 | $288.00 |
| Employee 11 | $552.00 | $528.00 |
| Employee 12 | $0.00 | $0.00 |
| Employee 13 | $575.00 | $550.00 |
|  |  |  |
| Total | $6,652.00 | $6,376.00 |

Pay is hourly and the foregoing numbers do include tax withholdings, marking gross obligations and not the sums of net paychecks. The Debtor hand-writes checks, after having a bookkeeper review payroll numbers, and those checks are then distributed to employees. So the foregoing figures represent the total obligation of the Debtor – excepting employer-side taxes – incidental to non-insider wages, and a good faith estimation of the cumulative pre-petition burden occasioned by the forthcoming payroll is thusly in the neighborhood of $4,500.00.

The restaurant's two owners understand that there is not a sufficiently compelling reason to pay the pre-petition portion of their wages, nor does such cause exist to pay the pre-petition portion of their son's wages. The Debtor's chief restructuring officer was formally appointed shortly pre-petition and is not seeking compensation for his pre-petition efforts, with all of his compensation to be subject to the approval of this Honorable Court. And there is thusly a cumulative obligation, for pre-petition wages, of a markedly paltry nature. While $4,500.00 is, no doubt, a notable sum of money, it is also one that ultimately pales in comparison to the revenues

5

of the Debtor (which well exceed $1.2 million each year) and the economic metrics of this case (which include alleged obligations of more than $600,000.00).

The Debtor does not operate a large, multi-national business and Jumbo Seafood's employees are not compensated pursuant to agreements with stock options, golden parachutes, and annual bonuses that mirror the price of a vacation home. These are, rather, hardworking people who make an honest and market-appropriate wage. Failing to timely pay those wages would not only risk financial harm to loyal workforces but, too, would prove potentially incendiary to the Debtor's efforts to reorganize for the benefit of all creditors.

### IV. Conclusion

WHEREFORE, Jumbo Seafood respectfully prays this Honorable Court (i) permit the Debtor to pay pre-petition wages to non-insider employees, in a sum not exceeding $5,000.00 in the aggregate; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: March 28, 2024        By:    /s/ Maurice B. VerStandig
                                    Maurice B. VerStandig, Esq.
                                    Bar No. MD18071
                                    The Belmont Firm
                                    1050 Connecticut Avenue, NW, Suite 500
                                    Washington, DC 20036
                                    Phone: (202) 991-1101
                                    mac@dcbankruptcy.com
                                    *Proposed Counsel for the Debtor*