Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW, Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for Jumbo*
*Seafood Restaurant, Inc.*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-90-ELG |
| | ) | (Chapter 11) |
| JUMBO SEAFOOD RESTAURANT, INC. | ) | |
| | ) | |
| Debtor. | ) | |

**APPLICATION TO APPROVE EMPLOYMENT OF**
**<u>DALLAS R. EVANS AS CHIEF RESTRUCTURING OFFICER</u>**

Comes now Jumbo Seafood Restaurant, Inc. (the "Debtor" or "Jumbo Seafood"), pursuant to Sections 327 and 363 of Title 11 of the United States Code (the "Bankruptcy Code"), as well as Federal Rule of Bankruptcy Procedure 2014, and applies to employ Dallas R. Evans ("Mr. Evans") as chief restructuring officer ("CRO") of the Debtor, and in support thereof states as follows:

**I.     Introduction**

Shortly before commencing this case, Jumbo Seafood appointed Mr. Evans to act as the entity's CRO, vesting him with authority to file a petition for bankruptcy relief and directing him, post-petition, to seek employment on specified terms. Key amongst those terms is the Debtor's desire that Mr. Evans be a CRO who cannot be removed by Jumbo Seafood's equity interests but, rather, only by this Honorable Court (albeit with equity certainly having standing to file an appropriate motion and assert the existence of cause for removal). All cases have their idiosyncrasies but this case has, perhaps, more than others; ensuring the Debtor's representative

1

have maximum credibility and a clearly-defined abiding loyalty to the estate is critical *sub judice*. Solidifying Mr. Evans' employment as CRO will achieve these ends.

## II. Standard

Familiarly, a debtor-in-possession (standing in the shoes of a trustee) is permitted to "employ one or more … professional persons, that do not hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the [debtor-in-possession] in carrying out the [debtor-in-possession's] duties under [the Bankruptcy Code]." 11 U.S.C. § 327(a).[1] [2]

The Federal Rules of Bankruptcy Procedure, in turn, require an application such as this shall, *inter alia*:

> … state the specific facts showing the necessity for the employment, the name of the person to be employed, the reasons for the selection, the professional services to be rendered, any proposed arrangement for compensation, and, to the best of the applicant's knowledge, all of the person's connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States trustee.

Fed. R. Bankr. P. 2014(a).

---

[1] While the employment of a restructuring officer is frequently sought pursuant to Section 363(b) of Title 11 of the United States Code, that section is of less relevance *sub judice* since Mr. Evans was employed by the Debtor pre-petition. In this regard, Mr. Evans' employment is analogous to that of a small business owner who has perennially taken only equity distributions as compensation and who, on the eve of filing, places herself/himself on the company's payroll so as to create a standardized employment arrangement.

[2] The term "professional persons" is not defined in Title 11 of the United States Code. However, "[s]ome courts have defined the term as an individual who takes a central role in the bankruptcy estate and proceedings, as opposed to one who provides services that are necessary irrespective of bankruptcy." *In re Evan Johnson & Sons Constr., Inc.*, 2019 WL 5057948, at *3 (Bankr. S.D. Miss. Mar. 11, 2019) (citing *In re Bannerman Holdings, LLC*, 2010 WL 2404313 at *2-3 (Bankr. E.D.N.C. June 10, 2010); *In re Century Inv. Fund VII Ltd. P'ship*, 96 B.R. 884, 893 (Bankr. E.D. Wis. 1989); *In re D'Lites of Am., Inc.*, 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989); *In re Seatrain Lines, Inc.*, 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981)).

### III. Formalistic Recitations

Pursuant to the rigors of the above-cited rule, the Debtor notes that (i) Mr. Evans is the person to be employed; (ii) Mr. Evans has been selected based on his sterling credentials, familiarity with local development, familiarity with the District of Columbia government, familiarity with the Debtor, and respected reputation; (iii) as CRO, Mr. Evans will act as the debtor-in-possession's representative in this case, being vested with complete decision-making authority; (iv) Mr. Evans seeks to be compensated at the rate of $300.00 per hour, with his compensation being subject to the approval of this Honorable Court and with said compensation to come from the Debtor; and (v) Mr. Evans' connections, *vel non*, with the Debtor, creditors, other parties in interest, their respective attorneys and accountants, the United States Trustee, and persons employed in the office of the United States Trustee, are set forth in the attached declaration.

### IV. Argument

#### a. Mr. Evans is Well Qualified both Legally and Pragmatically

Mr. Evans holds an undergraduate degree in accounting from the University of Maryland at College Park and an MBA (with a concentration in real estate) from American University. He is a licensed real estate broker in the District of Columbia and, before entering his current stint in the private sector, was the Deputy Mayor of Operations for the District of Columbia, in which capacity he managed over 44 million square feet of real estate assets and over $7 billion in citywide procurements. As a municipal employee, Mr. Evans worked with public and private partners to develop over 1.5 million square feet of government centers, overseeing the relocation of 5,000 government employees.

In the private space, Mr. Evans formerly served as the president of ISI Professional Services, managing more than 57 million square feet of corporate and government real estate portfolios. In this capacity, he worked closely with various federal government agencies, advised the Board of Regents of the Smithsonian Institution, and interfaced extensively with the National Institutes of Health and the United States Department of the Interior.

Mr. Evans has also been a loyal patron of Jumbo Seafood since the 1980s, dating to his work on the District of Columbia's Alcoholic Beverage Commission. While he holds no economic interest in the Debtor and has never been employed by the Debtor, he is exceedingly familiar with the Debtor's operations, has been personally present for much of the Debtor's storied history, and has informally advised the Debtor in the lead up to the filing of this case. Mr. Evans possesses an acute understanding of the macroscopic financial and operational issues that have delivered Jumbo Seafood to this Honorable Court, as well as a refined knowledge of the tendencies and positions of major stakeholders in this case, and is thusly well qualified to serve as CRO.

### b. The Debtor and its Creditors Will Benefit from the Services of a CRO

The phrase "Chief Restructuring Officer" or "CRO" appears in 167 bankruptcy court opinions, published and unpublished, discoverable through a Westlaw search; none of the opinions come from this Honorable Court. No doubt, CROs have almost assuredly served in cases in this district previously – and currently serve in neighboring districts – but, whether by reason of such never proving sufficiently controversial to merit a written opinion or otherwise, there is no binding precedential standard in the District of Columbia. It is hoped the relief sought herein will not prove so contentious as to invite the creation of such precedent.

Mr. Evans was appointed CRO, by the Debtor's board of directors, pre-petition, in accord with District of Columbia law. Technically speaking, this appointment was no different than the

board naming a new chief executive officer, chief financial officer, chief technology officer, or chief marketing officer; the board – in its statutorily-vested wisdom – identified a need to engage an officer and appointed Mr. Evans to the position. Since this occurred pre-petition, leave of court was neither required nor obtainable.

What the Debtor seeks now is to cement that appointment, consistent with the original resolution of the board. Bankruptcy courts are vested with the power to appoint a "Responsible Officer" for a debtor-in-possession. *Matter of Gaslight Club, Inc.*, 782 F.2d 767, 771 (7th Cir. 1986) (citing *In re FSC Corp.*, 38 B.R. 346 (Bankr. W.D. Penn. 1983)). And this Honorable Court does, too, have the authority to make such appointments in a manner that restricts the subsequent removal of the responsible officer. *See, e.g.*, *In re K.G. IM, LLC*, 620 B.R. 469, 476 (Bankr. S.D.N.Y. 2020) (approving the appointment of a CRO with "all of the powers and duties to operate the Debtors' business" and the "sole and exclusive power to exercise all of the management, voting rights, consent rights and powers of each of the Debtors, without regard to, or requirement of, any management, voting rights, consent rights, consultation rights or powers of any person who has any such rights or powers under any of the Debtors' Operating Agreements…").

Indeed, even when the United States Bankruptcy Court for the Southern District of New York questioned if a bankruptcy court may independently appoint a CRO in the first instance (something not at issue *sub judice* since Mr. Evans was appointed by the board, pre-petition), that court still held, *inter alia*, "Sections 105(a) and 1107(a) may empower a bankruptcy court to prevent a debtor from removing a manager, officer or director, but they do not provide the Court

with an independent power of appointment." *In re 1031 Tax Group, LLC*, 2007 WL 2085384, at *3 n. 4 (Bankr. S.D.N.Y. July 17, 2007).[3]

Here, the Debtor seeks to employ Mr. Evans in a manner wholly consistent with *Gaslight Club*, *FSC Corp.*, *K.G. IM*, and *1031 Tax Group*. Mr. Evans was appointed by the board pre-petition and thusly held the position of CRO at the time this case was filed. This application seeks only to formalize his ongoing employment and, per the foregoing cases, to establish an added layer of credibility by ensuring his employment not be compromised by threat of non-judicial removal.[4]

Mr. Evans was appointed, in the first instance, to ensure Jumbo Seafood is able to navigate the oft-tumultuous waters of Chapter 11 without the entity's ethos inviting distraction. For myriad reasons – some optical, some substantive – the Debtor entered bankruptcy acutely aware of the benefits of reputational value, understanding Mr. Evans to be well qualified to imbue Jumbo Seafood's cause with distinction and credibility. And so, in appointing Mr. Evans, the Debtor expressly envisioned a regime whereby his role would not be subject to even the appearance of

---

[3] While the United States Trustee has, for more than two decades, informally suggested application of the so-called "Jay Alix Protocol," which notably curtails the purview of CROs, such a limiting approach has been rejected by multiple courts. *See, e.g.*, *In re McDermott Int'l, Inc.*, 614 B.R. 244, 252–53 (Bankr. S.D. Tex. 2020) ("While innovative at its inception, the Alix Protocol has become a tool to avoid transparency and create inequity. Based on the Court's observations, applicants selectively comply with the protocol's requirements in a majority of cases. The protocol's suggestion that separate entities be utilized as artificial barriers creates confusion… These examples are but a sampling and tarnish the sanctity of a process that demands complete transparency. Moreover, the protocol is completely unnecessary."); *In re Blue Stone Real Estate, Const. & Dev. Corp.*, 392 B.R. 897, 907 (Bankr. M.D. Fla. 2008) ("The so-called 'Jay Alix' protocol that depends upon section 363 for retention of an executive officer does not provide the Court the same ability to meet the twin goals of section 327 when the candidate for employment is also a professional.").

[4] The distinction between these two goals is noteworthy. While the Debtor seeks judicial approval of both, it is not clear that such authorization is needed to continue the employment of an officer appointed pre-petition, whereas it is clear judicial approval is needed to ensure that officer not be subsequently removed by the Debtor's board.

6

undue meddling or influence and where his loyalties would be firmly and unquestionably directed toward the Debtor's estate and its constituent creditor body.

V.      **Conclusion**

As evidenced by the hearty attendance and robust colloquy at a first day hearing, this case presents no indicia of being easy. The legal, financial and temporal hurdles the Debtor will need to navigate, so as to successfully reorganize herein, promise to both numerous and testing. But that is a challenge Jumbo Seafood opted to embrace, clear-eyed and well informed, in petitioning for bankruptcy relief. And that is a challenge Jumbo Seafood believes most readily navigable under the sage helm of Mr. Evans.

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) enter an order approving the employment of Dallas R. Evans as Chief Restructuring Officer to the Debtor; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 3, 2024       By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The VerStandig Law Firm, LLC
9812 Falls Road, #114-160
Potomac, Maryland 20854
Phone: (301) 444-4600
mac@mbvesq.com
*Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 3rd day of April, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein including, *inter alia*, counsel for the United States Trustee.

/s/ Maurice B. VerStandig
Maurice B. VerStandig