IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-90-ELG |
| | ) | (Chapter 11) |
| JUMBO SEAFOOD RESTAURANT, INC. | ) | |
| | ) | |
| Debtor. | ) | |

**OPPOSITION TO MOTION FOR RELIEF
FROM STAY TO PROCEED WITH EVICTION;
OR, ALTERNATIVELY, DETERMINING AUTOMATIC
STAY DOES NOT APPLY, AND REQUEST TO IMPOSE
IN REM RELIEF AND/OR EQUITABLE SERVITUDE TO
PREVENT ANY FUTURE BANKRUPTCY FROM STAYING
<u>EVICTION OF DEBTOR AND ANY OTHER OCCUPANTS</u>**

Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Proposed Counsel for Jumbo
Seafood Restaurant, Inc.*

# **TABLE OF CONTENTS**

I.      Introduction ........................................................................................................... 1

II.     Argument .............................................................................................................. 3

      a.    The Automatic Stay is Applicable ......................................................... 3

          i.    The Stay Expressly Applies to the Debtor's Property ............................. 3

          ii.   The Trustee Does Not Possess Police or Regulatory Powers ................... 6

          iii.  Section 362(b)(10) is Inapplicable (Maybe)  ............................................ 9

      b.    The Trustee is Not Entitled to a Turnover of the Property ................... 10

          i.    The Trustee Did Not Seek – Nor Did the Trustee Obtain – an
              Order of Turnover in the *Cheng & Company* Case ................................ 10

          ii.   Tenants Have Rights Under Rejected Leases ......................................... 12

      c.    The Rejection Order is Avoidable ....................................................... 13

      d.    If the Rejection Order is Not Avoidable, Jumbo Seafood Entered Into a
         New Lease ........................................................................................... 15

      e.    The Debtor Does Not Oppose the Making of Adequate Protection
         Payments  ............................................................................................ 16

      f.    Neither *In Rem* Relief nor an Equitable Servitude are Appropriate ................... 18

          i.    The Debtor Seeks to Reorganize in Good Faith ..................................... 18

          ii.   An Equitable Servitude is Inappropriate in this Case ............................ 19

III.    Conclusion ......................................................................................................... 21

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*,
835 F.2d 427 (2d Cir. 1987)..................................................................................... 4, 5

*Barton v. Barbour*,
104 U.S. 126 (1881).................................................................................................. 10

*California State Bd. of Equalization v. Sierra Summit, Inc.*,
490 U.S. 844 (1989)................................................................................................ 6, 7

*Commodity Futures Trading Comm'n v. Weintraub*,
471 U.S. 343 (1985)................................................................................................... 6

*Davis v. Moore*,
772 A.2d 204 (D.C. 2001) ......................................................................................... 16

*Department of Employment v. United States*,
385 U.S. 355 (1966)................................................................................................... 6

*Granfinanciera, S.A. v. Nordberg*,
492 U.S. 33 (1989)..................................................................................................... 12

*In re 48th Street Steakhouse, Inc.*,
61 B.R. 182 (Bankr. S.D.N.Y. 1986) ........................................................................... 5

*In re Airport Executive Ctr., Ltd.*,
138 B.R. 628 (Bankr. M.D. Fla. 1992) ...................................................................... 16

*In re Atl. Bus. & Cmty. Corp.*,
901 F.2d 325 (3d Cir. 1990)..................................................................................... 4, 5

*In re Barkats*,
2019 WL 3934799 (Bankr. D.D.C. Aug. 16, 2019)..................................................... 14

*In re Bay Area Glass, Inc.*,
454 B.R. 86 (B.A.P. 9th Cir. 2011)............................................................................ 15

*In re Cardell, Inc.*,
2009 WL 1973551 (D. N.J. 2009) ............................................................................. 17

*In re Carpenter*,
2010 WL 2640604 (Bankr. D.D.C. June 29, 2010) ................................................................. 8, 9

*In re Chappelle*,
2000 WL 33529767 (Bankr. D.D.C. Feb. 27, 2000) ................................................................ 20

*In re Consol. Med. Transp., Inc.*,
300 B.R. 435 (Bankr. N.D. Ill. 2003) ..................................................................................... 15

*In re Convenient Food Mart No. 144, Inc.*,
968 F.2d 592 (6th Cir. 1992) .................................................................................................... 4

*In re Crockett*,
3 B.R. 365 (Bankr. N.D. Ill. 1980) ......................................................................................... 17

*In re Dingley*,
852 F.3d 1143 (9th Cir. 2017) ............................................................................................. 7, 8

*In re Duff*,
2020 WL 119685 (Bankr. D.D.C. Jan. 9, 2020) ..................................................................... 11

*In re Easley*,
2022 WL 965286 (Bankr. D.D.C. Mar. 30, 2022) .................................................................. 20

*In re Franklin Equip. Co.*,
416 B.R. 483 (Bankr. E.D. Va. 2009) ..................................................................................... 17

*In re Griggsby*,
404 B.R. 83 (Bankr. S.D.N.Y. 2009) ........................................................................................ 5

*In re Jefferson Cnty., Ala.*,
474 B.R. 228 (Bankr. N.D. Ala. 2012) ..................................................................................... 6

*In re Kelly*,
656 B.R. 541 (Bankr. D. Md. 2023) ....................................................................................... 20

*In re Kupperstein*,
994 F.3d 673 (1st Cir. 2021) ................................................................................................. 7, 8

*In re Mad LO LO LLC*,
2009 WL 2902567 (Bankr. S.D.N.Y. May 28, 2009) ............................................................... 5

iv

*In re Masterworks, Inc.*,
94 B.R. 262 (Bankr. D. Conn. 1988) ........................................................................ 4

*In re MBM Sand Co., LLC*,
2021 WL 8016834 (Bankr. S.D. Tex. Apr. 15, 2021) .............................................. 12

*In re MP PPH LLC*,
2024 WL 1087492 (Bankr. D.D.C. Mar. 12, 2024) .................................................. 7

*In re O'Connor*,
808 F.2d 1393 (10th Cir. 1987) ............................................................................... 17

*In re Sann*,
546 B.R. 850 (Bankr. D. Mont. 2016) ...................................................................... 6

*In re Stone*,
1998 WL 1819081 (Bankr. D.D.C. Nov. 4, 1998) .................................................. 11

*In re Sullivan*,
551 B.R. 868 (Bankr. D. Mass. 2016) ...................................................................... 5

*In re Swedeland Dev. Group, Inc.*,
16 F.3d 552 (3d Cir. 1994) ....................................................................................... 17

*In re Toggas*,
2019 WL 7172878 (Bankr. D.D.C. Dec. 23, 2019) ................................................ 20

*In re Yimam*,
214 B.R. 463 (Bankr. D. Md. 1997) ........................................................................ 19

*In re Young*,
193 B.R. 620 (Bankr. D.D.C. 1996) ........................................................................ 11

*Javens v. City of Hazel Park (In re Javens)*,
107 F.3d 359 (6th Cir. 1997) ..................................................................................... 6

*Mendes v. Johnson*,
389 A.2d 781 (D.C. 1978) ........................................................................................ 16

*NASCO, Inc. v. Calcasieu Television & Radio, Inc.*,
894 F.2d 696 (5th Cir. 1990) ..................................................................................... 8

*NextWave Pers. Commc'ns, Inc. v. F.C.C.*,
254 F.3d 130 (D.C. Cir. 2001) ............................................................................ 6

*NLRB v. Edward Cooper Painting, Inc.*,
804 F.2d 934 (6th Cir. 1986) .............................................................................. 7

*NLRB v. Sawulski*,
158 B.R. 971 (E.D. Mich. 1993) ......................................................................... 7

*Parklane Hosiery Co., Inc. v. Shore*,
439 U.S. 322 (1979) ............................................................................................. 12

*Penn Terra Ltd. v. Dep't of Env't Res.*,
733 F.2d 267 (3d Cir. 1984) ............................................................................... 7

*Rees v. United States*,
95 F.2d 784 (4th Cir. 1938) ............................................................................... 13

*United States v. Inslaw, Inc.*,
932 F.2d 1467 (D.C. Cir. 1991) ......................................................................... 5

## Statutes

11 U.S.C. § 323 .................................................................................................... 6

11 U.S.C. § 361 .................................................................................................... 17

11 U.S.C. § 362 ............................................................................................ *passim*

11 U.S.C. § 547 .......................................................................................... 13, 14, 15

18 U.S.C. § 401 .................................................................................................... 8

28 U.S.C. § 586 .................................................................................................... 6

98 Stat. 333 ......................................................................................................... 5

D.C. Code § 42-3210 ...................................................................................... 4, 16

## Rules

District of Columbia Landlord Tenant Rule 6 ............................................................................ 12

Federal Rule of Bankruptcy Procedure 7001 ............................................................................. 11

Federal Rule of Bankruptcy Procedure 9015 ............................................................................. 12

## Other Authorities

3 J. Elliot, Debates on the Federal Constitution 658 (2d ed. 1836) ............................................ 13

H.R. Rep. No. 595, 95th Cong., 1st Sess. ................................................................................... 5

S. Rep. No. 989, 95th Cong., 2d Sess. ....................................................................................... 5

Comes now Jumbo Seafood Restaurant, Inc. (the "Debtor" or "Jumbo Seafood"), pursuant to Local Rule 9013-1, and in opposition to the Motion for Relief from Stay to Proceed with Eviction; Or, Alternatively, Determining Automatic Stay Does Not Apply, and Request to Impose In Rem Relief and/or Equitable Servitude to Prevent Any Future Bankruptcy from Staying Eviction of Debtor and Any Other Occupants (the "Motion," as found at DE #24) filed by Wendell W. Webster, the Chapter 7 trustee of Cheng & Company L.L.C. (the "Trustee," with the correlative debtor being known as the "Landlord") states as follows:

## I.    Introduction

The Trustee has not obtained a writ of eviction from the District of Columbia Superior Court. Nor, despite his apparent belief otherwise, has he obtained a judgment of turnover from this Honorable Court. Yet the Trustee now petitions for relief from the automatic stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay") to oust Jumbo Seafood from the space the Debtor has occupied for decades. Alternatively, the Trustee suggests – fleetingly, and without substantive supporting argument – that the Automatic Stay might somehow be inapplicable to this case. These efforts are legally and factually ill-informed and ought not be countenanced, except to the degree to the Trustee wishes to acknowledge that he entered into a new lease with Jumbo Seafood. Bizarrely and peculiarly, should the Trustee concede this one factual point, the Debtor necessarily, in turn, recognizes that the Automatic Stay is inapplicable *sub judice*.

This is, by any measure, an unusual case. The Debtor has filed an adversary proceeding seeking to avoid a preferential transfer in favor of a Chapter 7 trustee, and has done so in the very court that facilitated the preferential transfer. The Trustee, in turn, is standing upon rights putatively conveyed in an order (the "Consent Order") that, as a matter of law, cannot actually be

1

construed as a judgment for turnover. A landlord and its singular tenant are both in bankruptcy, being admitted insiders of one another, yet one entity is helmed by a chief restructuring officer and the other by a Chapter 7 trustee. And, at the heart of all these quirky peculiarities, sits a Chinese seafood restaurant that has been a part of the District of Columbia's lifeblood for decades.

So it comes as little surprise that there is much to unpack in the Motion, just as there is much to be done in this case. At core, though, the Trustee's petition merits denial for a cadre of reasons: (i) the Automatic Stay *is* applicable, unless a new lease has been entered into in the form of the Consent Order; (ii) if the Consent Order constitutes a new lease, such necessarily has not been (and cannot now be) rejected by the Trustee; (iii) there is no judgment for turnover against the Debtor; (iv) there is no judgment for eviction against the Debtor; (v) the legal prerequisites to an order of *in rem* relief are not satisfied *sub judice*; (vi) the vaguely-defined prerequisites to entry of an equitable servitude are also missing in this case; and (vii) the Debtor can – and should – tender to the Trustee monetary and in-kind adequate protection that preserves the Trustee's interests in the real estate and improvements located at 619 H Street, NW, Washington, DC 20001 (the "Property") whilst also allowing the Trustee to market the Property in a commercially reasonable fashion.

For these reasons, and as extrapolated upon *infra*, the Motion merits denial (unless, again, the Trustee wishes to acknowledge having entered into a new lease with Jumbo Seafood, in which case the Motion should be granted to the extent necessary to clarify that the Automatic Stay is inapplicable in this case).

## II.    Argument

### a.  The Automatic Stay is Applicable

Before assessing the reasons the automatic stay set forth in Section 362 of Title 11 of the United States Code (the "Automatic Stay") ought not be lifted, it bears notation that the Automatic Stay is likely applicable in the first instance. The Trustee fleetingly suggests such to not be the case because the governing statutory language provides an exception for police and regulatory powers, as well as an exception for expired nonresidential leases. Motion, DE #24, at ¶¶ 31-33. These contentions are misplaced except to the extent the Trustee wishes to acknowledge having entered into a new – and now-expired – nonresidential lease with the Debtor.

### i.  The Stay Expressly Applies to the Debtor's Property

Initially, the unusual posture of the Trustee's legal efforts is noteworthy. As discussed in greater detail *infra*, the Trustee has not petitioned for (much less received) a judgment of eviction or a judgment of turnover. So while the Trustee does assert rights in the Property, neither a writ nor a judgment issued pre-petition.

The Automatic Stay protects Jumbo Seafood from, *inter alia*, "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Had the Trustee obtained a judgment pre-petition (which, again, he did not), the Automatic Stay would also protect against "the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title." 11 U.S.C. § 362(a)(2).

Insofar as carrying out an eviction would necessarily require displacing the Debtor's personal property – and thusly be an act "to exercise control over property of the estate" – the Automatic Stay is clearly applicable. Self-evidently, the United States Marshals cannot move

woks, custom chairs, silverware, and other personal property to the curb (or a storage locker) without exercising control over that personal property.

Equally, however, and as noted in the Debtor's now-pending adversary proceeding against the Trustee,[1] it appears the consent order rejecting Jumbo Seafood's prior lease of the Property is either (i) an avoidable preference; or (ii) a new lease. If the former, the old lease remains in full force and effect, giving Jumbo Seafood a cognizable interest in the Property. If the latter, the consent order itself creates a leasehold interest in favor of the Debtor, with Jumbo Seafood having all the legal rights of a tenant holding over. So it is not merely that personal property interests would be violated through an eviction; it is, too, that Jumbo Seafood's real property interests would be violated through an eviction.

Critically, the District of Columbia's statutory scheme provides that a writ of eviction may be obtained only from the Superior Court. D.C. Code § 42-3210. Unless and until such a writ is obtained (or, alternatively, a judgment of turnover is obtained from this Honorable Court), Jumbo Seafood will continue to possess a "naked possessory interest, which is property of its estate." *In re Masterworks, Inc*., 94 B.R. 262, 267 (Bankr. D. Conn. 1988) (citing *48th Street Steakhouse, Inc. v. Rockefeller Group, Inc. (In re 48th Street Steakhouse, Inc.)*, 835 F.2d 427, 430 (2d Cir. 1987)). *See also In re Atl. Bus. & Cmty. Corp*., 901 F.2d 325, 328 (3d Cir. 1990) (". . . we hold that a debtor's possession of a tenancy at sufferance creates a property interest as defined under Section 541, and is protected by Section 362 of the Bankruptcy Code."); *In re Convenient Food Mart No. 144, Inc*., 968 F.2d 592, 594 (6th Cir. 1992) ("We join the other circuits in holding that a tenancy at sufferance is a possessory interest in real property within the scope of the estate in

---

[1] *See Jumbo Seafood Restaurant, Inc. v. Webster*, Case No. 24-10007-ELG (Bankr. D.D.C. 2024).

bankruptcy under section 541.") (citing *48th St. Steakhouse, Inc.*, 835 F.2d 427; *Atl. Bus. & Cmty. Corp*, 901 F.2d 325); *In re Sullivan*, 551 B.R. 868 (Bankr. D. Mass. 2016) (". . . an attempt to deprive a debtor of her possessory interest in the property (even an allegedly wrongful one) remains subject to the stay.").

Indeed, even if a writ of eviction had been obtained pre-petition, the Automatic Stay would *still* serve to bar the Trustee from executing upon that writ. *See, e.g., In re Mad LO LO LLC*, 2009 WL 2902567, at *2 (Bankr. S.D.N.Y. May 28, 2009) (". . . while '[t]he issuance of a warrant of eviction severs the landlord-tenant relationship,' the debtor's possessory interest in the property can support sustaining the automatic stay.") (quoting *In re Griggsby*, 404 B.R. 83, 92 (Bankr. S.D.N.Y. 2009) (citing *48th Street Steakhouse*, 835 F.2d at 430));

Lest the foregoing cases from other courts appear unpersuasive, the United States Court of Appeals for the District of Columbia Circuit has, too, touched upon this issue, approvingly citing to the bankruptcy court opinion underlying the *48th Street Steakhouse* ruling of the Second Circuit:

> In adding the "exercise control" language to § 362(a)(3) in the 1984 Bankruptcy Amendments, Congress gave no explanation. One court has traced this language to the description of § 362(a)(3) found in the committee reports on the 1978 Bankruptcy Act, which refer to property of the estate as "property over which the estate has control or possession."

*United States v. Inslaw, Inc.*, 932 F.2d 1467, 1473 n. 3 (D.C. Cir. 1991) (citing 98 Stat. 333, 371; quoting *In re 48th Street Steakhouse, Inc.*, 61 B.R. 182, 187 & n. 10 (Bankr. S.D.N.Y. 1986); citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 341; S. Rep. No. 989, 95th Cong., 2d Sess. 50.)

The Automatic Stay is accordingly applicable to this case unless a new lease has been entered into (with the rationale for such being discussed below). Not only does the familiar protection serve to prohibit the Trustee from interfering with the Debtor's personal property interests by taking such items to the curb (or any other locale) but the language does, too, protect Jumbo Seafood's possessory interest in the Property itself.

### ii.   The Trustee Does Not Possess Police or Regulatory Powers

The Trustee contends, alternatively, that he may proceed with evicting the Debtor because the Automatic Stay contains an exception for actions of "a governmental unit . . . to enforce such governmental unit's or organization's police and regulatory powers. . ." Motion, DE #24, at ¶ 32 (quoting 11 U.S.C. § 362(b)(4)). It necessarily comes as some surprise to learn the Trustee feigns to be a "governmental unit" possessing "police and regulatory powers."

Even when confronted with an indenture trustee serving for the benefit of holders of county warrants, a bankruptcy court has declined to find the police and regulatory exception applicable. *See In re Jefferson Cnty., Ala.*, 474 B.R. 228, 261 (Bankr. N.D. Ala. 2012) ("Notably absent from the police and regulatory power exclusion are acts by the Indenture Trustee or Receiver to create, perfect or enforce a lien against property of the County.") (citing 11 U.S.C. § 362(b)(4); *NextWave Pers. Commc'ns, Inc. v. F.C.C.*, 254 F.3d 130, 135–36 (D.C. Cir. 2001); *Javens v. City of Hazel Park (In re Javens)*, 107 F.3d 359, 370 (6th Cir. 1997)).

More to the point, though, the Trustee is, by statutory definition, a "private" individual. 28 U.S.C. § 586(a)(1). As observed by the United States Bankruptcy Court for the District of Montana, a Chapter 7 trustee is ". . . a private trustee, . . . not the United States nor any agency or official of the United States acting in her official capacity." *In re Sann*, 546 B.R. 850, 858 (Bankr. D. Mont. 2016). In the words of the nation's highest court, "[t]he bankruptcy trustee is 'the representative of the estate [of the debtor],' not 'an arm of the Government. . .'" *California State Bd. of Equalization v. Sierra Summit, Inc.*, 490 U.S. 844, 849 (1989) (quoting 11 U.S.C. § 323(a); citing *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343 (1985); quoting *Department of Employment v. United States*, 385 U.S. 355, 359-360 (1966)).

Yet even if *Sierra Summit* were to be overturned and the Trustee were deemed to be a governmental unit, the police and regulatory power exception would still not permit an eviction to proceed. As this Honorable Court observed just last month, "post-petition 'seizure of a [debtor's] property to satisfy the judgment obtained by a plaintiff-creditor' does not fall within the police and regulatory exception." *In re MP PPH LLC*, 2024 WL 1087492, at *8 (Bankr. D.D.C. Mar. 12, 2024) (quoting *NLRB v. Sawulski*, 158 B.R. 971, 978 (E.D. Mich. 1993) (citing *NLRB v. Edward Cooper Painting, Inc*., 804 F.2d 934, 943 (6th Cir. 1986)); *Penn Terra Ltd. v. Dep't of Env't Res*., 733 F.2d 267, 275 (3d Cir. 1984)).

The Trustee relies on *In re Kupperstein*, a case in which enforcement of a state probate court's "contempt orders are excepted from the automatic stay under the police power exception." *In re Kupperstein*, 994 F.3d 673, 681 (1st Cir. 2021). But that case is readily distinguishable not merely because there is no contempt order *sub judice* but, too, because the rights of a state court to enforce its own contempt order are assuredly the work of a government actor, whereas the efforts of a private trustee to evict a tenant have no governmental nexus. The only "government" figure in this case is this Honorable Court; yet if the mere existence of a court order were sufficient to invoke an exception to the Automatic Stay, every state, federal, territorial, or tribal judgment – whether monetary, injunctive, or otherwise – would be exempt and the exception would swallow the rule.

The Trustee's reliance on *In re Dingley* is similarly misplaced. That case merely stands for the relatively-uncontroversial proposition that "civil contempt proceedings are exempted from the automatic stay under the Bankruptcy Code's government regulatory exemption, when, as here, the contempt proceedings are intended to effectuate the court's public policy interest in deterring litigation misconduct." *In re Dingley*, 852 F.3d 1143, 1144 (9th Cir. 2017). Again, the Landlord's

7

bankruptcy is not a contempt case, the Debtor has never been held in contempt, no contempt proceedings were pending pre-petition, and Jumbo Seafood has not engaged in any contemptuous conduct. More to the point, though, *Dingley* reinforces that the narrow exception applied is intended to protect the *court's* interests as a governmental unit – not the interests of private litigants in that court.

There is little surprise in the existence of multiple cases standing for the proposition that a contempt order is protected by the police power exception to the Automatic Stay; orders of contempt are the mechanism through which the judiciary exercises its own police power. *See, e.g.*, *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, 894 F.2d 696, 702 (5th Cir. 1990) (". . . federal courts have inherent power to police themselves by civil contempt, imposition of fines, the awarding of costs and the shifting of fees."); 18 U.S.C. § 401 ("A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as— (1)Misbehavior of any person in its presence or so near thereto as to obstruct the administration of justice; (2)Misbehavior of any of its officers in their official transactions; (3)Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."). And there thusly exists a meaningful distinction between orders of contempt and nearly all other orders of the federal judiciary.

Yet, aside from the necessary distinction of this not being a contempt case, *Kupperstein* and *Dingley* are unpersuasive for a more specific reason: local precedent instructs that a tribunal's enforcement of its own contempt order does *not* fall within the "police or regulatory power" exception to the Automatic Stay unless the contempt citation is of a criminal variety. In the matter of *In re Carpenter*, this Honorable Court noted, *inter alia*:

> Congress set forth in § 362(b) the exceptions to the automatic stay, and it is not for the courts to create an additional exception for a state court's civil contempt

incarceration order based on the order having the incidental effect of upholding the dignity of the state court. The incidental impact of a civil contempt incarceration order of upholding the dignity of the court does not fit within any of the statutory exceptions to the automatic stay.

. . .

Nor would the incarceration order here, if a civil contempt incarceration order, constitute enforcement of a "police or regulatory power" such that continued enforcement of the order fits within the exception of 11 U.S.C. § 362(b)(4) to the automatic stay.

*In re Carpenter*, 2010 WL 2640604, at *4 (Bankr. D.D.C. June 29, 2010).

So even if, *arguendo*, the Trustee had moved to hold Jumbo Seafood in contempt pre-petition, and even if, *arguendo*, a coercive civil contempt order had followed pre-petition, such would still not be enforceable absent relief from the Automatic Stay. There would, rather, need to be an order of criminal contempt for the police and regulatory exception to apply *sub judice*.

### iii.  Section 362(b)(10) is Inapplicable (Maybe)

The final argument made by the Trustee, in support of applying an exemption to the Automatic Stay, concerns nonresidential leases that have expired per their "stated term . . . before the commencement of or during a case . . ." Motion, DE #24, at ¶ 33 (quoting 11 U.S.C. § 362(b)(10)). This provision initially appears to be inapplicable because, as the Trustee argues, the last written lease "expires in 2027." *Id.* at ¶ 7.

The language of this particularly statutory provision is exceedingly limited, applying only to leases that have expired pursuant to their "stated term." 11 U.S.C. § 362(d)(10). The provision does not speak to leases that have been terminated by reason of breach, or even to leases that have been rejected by a bankruptcy trustee.

Yet this exception may actually be applicable. If, as Jumbo Seafood contends in its adversary proceeding against the Trustee, the consent order between the two parties constitutes a new lease under District of Columbia law, that new lease would have expired pursuant to its "stated

term . . . before the commencement" of this case. And, in such an eventuality, the Trustee would

be free to file an action for eviction, in the Superior Court, without first obtaining stay relief from

this Honorable Court (just as he could initiate an action in this Honorable Court for turnover,

without first obtaining stay relief). Should the Trustee elect to do so, Jumbo Seafood will not

contend such actions to constitute a violation of the Automatic Stay.[2]

### b.   The Trustee Is Not Entitled to a Turnover of the Property

#### i.   The Trustee Did Not Seek – Nor Did the Trustee Obtain – an Order of Turnover in the *Cheng & Company* Case

In neither this case nor the Landlord's case has the Trustee obtained an order directing a

turnover of the Property. Indeed, while the Trustee suggests that he filed a motion seeking to reject

the Debtor's lease "and for turnover of the Property," Motion, DE #24, at ¶ 12, such is plainly not

so for two simple reasons: (i) the referenced underlying motion is not one for turnover; and (ii) a

proceeding to recover property from anyone other than an eponymous debtor in a given case must

be brought in the form of an adversary proceeding, not through motions practice.

The Trustee's Motion to Reject Certain Insider Commercial Lease and Require Insider

Commercial Tenant to Vacate Formerly Leases Premises (the "Rejection Motion," as found at DE

#87 in the Landlord's bankruptcy case, with that case being known as the "Landlord Bankruptcy")[3]

never uses the word "turnover" nor the words "turn over." *See* Rejection Motion, *passim*. Rather,

the Trustee merely sought therein (a) a determination the subject lease had been properly

terminated; (b) authorization to reject the subject lease; and (c) an order compelling Jumbo Seafood

---

[2] If the Trustee wishes to commence an eviction action in Superior Court, he would need leave of this Honorable Court, pursuant to the doctrine established in *Barton v. Barbour*, 104 U.S. 126 (1881). The Debtor will not object to such leave being granted.

[3] The Landlord Bankruptcy is *In re Cheng & Company L.L.C.*, Case No. 23-104-ELG (Bankr. D.D.C. 2023).

to either vacate the Property or pay past-due rent. *Id.* at pp. 8-9. And it is thusly difficult to interpret the Rejection Motion as formally seeking an order of turnover or a writ of possession, so much as seeking a declaration concerning the rejection of the lease and a statement of Jumbo Seafood's rights under that rejected lease.

Equally, the ensuing order (the "Rejection Order," as found at DE #98 in the Landlord Bankruptcy) cannot, as a matter of law, be an order for turnover because the Trustee did not file an adversary proceeding against Jumbo Seafood seeking a turnover of the Property. Excepting actions taken against a debtor in that debtor's own case, "a proceeding to recovery money or property" is an adversary proceeding. Fed. R. Bankr. P. 7001(1). *See also In re Young*, 193 B.R. 620, 628 (Bankr. D.D.C. 1996) ("Turnover pursuant to § 542(a) is instituted by an adversary proceeding.") (citing Fed. R. Bankr. P. 7001); *In re Duff*, 2020 WL 119685, at *1 (Bankr. D.D.C. Jan. 9, 2020) ("Under Fed. R. Bankr. P. 7001(1), a proceeding to recover money or property requires an adversary proceeding."); *In re Stone*, 1998 WL 1819081, at *3 (Bankr. D.D.C. Nov. 4, 1998) ("While F.R. Bankr.P. 7001(1) generally requires an adversary proceeding to be commenced if the proceeding is one to recover money or property, it specifically excepts 'a proceeding to compel the debtor to deliver property to the trustee' from this requirement. A motion thus suffices.")

The requirement of an adversary proceeding is not mere form over substance, either. Motions are rapidly-adjudicated summary proceedings; adversary proceedings are deliberately-paced federal lawsuits replete with formal summonses, an appropriate discovery period, occasion for dispositive motions to be filed, and all the other trappings of a procedure cloaked in time-tested layers of due process – including, as discussed *infra*, the right to trial by jury. A party receiving a motion may, as here, quickly engage counsel and make a rapid decision as to how best to respond;

11

a party formally summoned to answer an adversary proceeding is permitted a palpably more deliberate course of action commensurate with the generally-weightier stakes of such a proceeding.

### ii.  Tenants Have Rights Under Rejected Leases

The absence of a proper turnover judgment is critical because such means Jumbo Seafood – per the Trustee's own papers – still has all the rights afforded under non-bankruptcy law. Rejection Motion at ¶ 26. These rights include not merely the ability to cure an arrearage and remain in possession, *Id.*, but, too, all those rights attendant to defending an action for ejectment, *Id.* at ¶ 27. And amongst the rights attendant to defending an action for ejectment is the right to a trial by jury. D.C. R. Land. and Ten. 6(a).

Of course, Jumbo Seafood would, too, have a right to trial by jury in connection with an adversary proceeding for turnover, since such an action would be a *de facto* suit for ejectment. Fed. R. Bankr. P. 9015(a); *In re MBM Sand Co., LLC*, 2021 WL 8016834, at *5 (Bankr. S.D. Tex. Apr. 15, 2021); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 42 (1989).[4] And that trial could be overseen by this Honorable Court. Fed. R. Bankr. P. 9015(b).[5]

That a trial by jury is available in both the Superior Court on an ejectment action, and this Honorable Court on a turnover action, is neither coincidence nor folly. Indeed, "in controversies respecting property, and in suits between man and man, the ancient trial by jury is one of the greatest securities to the rights of the people, and [ought] to remain sacred and inviolable." *Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 343 n. 8 (1979) (quoting 3 J. Elliot, Debates

---

[4] *But see MBM Sand Co.*, 2021 WL 8016834, at *4 ("Whether an enforceable lease exists or whether Defendant is merely squatting on the Property, Defendant can only be expelled from the Property by eviction, not by turnover. Turnover is not the appropriate mechanism to determine disputed rights of parties to property.").

[5] The Debtor would consent to this Honorable Court presiding over a trial by jury in any turnover action.

on the Federal Constitution 658 (2d ed. 1836). *See also*, *Rees v. United States*, 95 F.2d 784, 790 (4th Cir. 1938) ("The value and appropriateness of trial by jury have been established by long experience, and are not now to be denied. The right of an accused to a trial by a constitutional jury has long been regarded as an inviolable right to be jealously preserved and has become a sacred tradition of our judicial system.").

So, whether in Superior Court or this Honorable Court, an action for turnover or ejectment would provide not merely an opportunity for Jumbo Seafood to cure any arrearage (something it may be able to do pursuant to a plan of reorganization herein) but, too, the right to a trial by jury. No aspect of the Rejection Motion is reasonably construed as an effort to deprive Jumbo Seafood of these sacrosanct rights. And it necessarily follows that no aspect of the Rejection Order can be reasonably construed as departing so wildly from the permissive contours of the underlying motion as to irrevocably compromise these rights.

### c. The Rejection Order Is Avoidable

Assuming, *arguendo*, that the Rejection Order is a turnover order, notwithstanding the foregoing substantive and procedural issues attendant to such a notion, the whole of the order is avoidable in nature. And while Jumbo Seafood appreciates that actions to avoid preferential transfers and fraudulent conveyances must be brought as adversary proceedings (just as with actions for turnover), the clear merits of such an action – which Jumbo Seafood has now filed – nonetheless warrant observation in connection with the instant Motion.

Reading the Rejection Order as mandating a "transfer of an interest" of Jumbo Seafood in the building so long occupied by the restaurant, such was certainly undertaken "to or for the benefit of a creditor." 11 U.S.C. § 547(b)(1). The Rejection Motion is largely premised upon the Trustee purporting to be a creditor of Jumbo Seafood, claiming an entitlement to collect unpaid back rent.

13

And insofar as the putative rent obligation is for months gone by, the subject debt would be antecedent in nature. 11 U.S.C. § 547(b)(2).

In the Motion instantly at issue, the Trustee makes much ado about Jumbo Seafood owing "hundreds of thousands of dollars of rent and sales taxes." Motion, DE #24, at p. 1. Lest that not suffice in evidencing insolvency, the Trustee goes on to admit as much, referring to Jumbo Seafood as "an insolvent entity…" *Id.* at ¶ 8. It accordingly follows that the Rejection Order was entered into at such a time as Jumbo Seafood "was insolvent." 11 U.S.C. § 547(b)(3).

Equally, the Rejection Order was entered "between ninety days and one year before the date" on which Jumbo Seafood sought bankruptcy protection. 11 U.S.C. § 547(b)(4)(B). And it is that one year period – not the shorter 90-day temporal window – that is applicable, since the Trustee acknowledges Jumbo Seafood is an "insider entity" of the Landlord, Motion, DE #24, at ¶ 7, and the Trustee "stands in the shoes of the debtor," *In re Barkats*, 2019 WL 3934799, at *5 (Bankr. D.D.C. Aug. 16, 2019).

The Rejection Order also clearly enabled the Trustee to "receive more than" he would have received had Jumbo Seafood sought bankruptcy protection under Chapter 7 and the Rejection Order not been entered. 11 U.S.C. § 547(b)(5). Tens of thousands of dollars were paid pursuant to the Rejection Order, enriching the Trustee (or, derivatively, the estate over which he presides). As the Trustee himself observes, Jumbo Seafood was insolvent at the time of the Rejection Order, Motion, DE #24, at ¶ 8, and owed a small fortune in taxes, *Id.* at p. 1. Even putting aside the UCC lien on Jumbo Seafood's assets (which, in fairness to the Trustee, is overwhelmingly likely to be satisfied by the assets of cross-collateralized obligors), the restaurant's assets would be markedly insufficient to pay taxes without ongoing operations – they assuredly would not have yielded a distribution to unsecured creditors like the Trustee, in a hypothetical Chapter 7 case.

14

Moreover, given the avoidable nature of the Rejection Order, the Bankruptcy Code dictates that the *whole* of the Rejection Order – not merely the provisions thereunder calling for monetary payment – is to be avoided. As observed by the Bankruptcy Appellate Pannel of the Ninth Circuit, "[w]hen Congress intends to limit avoidance to only a portion of a particular transfer, it knows how to do so. Several § 547(c) avoidance exceptions include 'to the extent' language limiting what portion of a particular transfer may be avoided." *In re Bay Area Glass, Inc.*, 454 B.R. 86, 90 (B.A.P. 9th Cir. 2011) (citing 11 U.S.C. § 547(c)(1)–(5), (c)(7)). It does not appear *any* of the exceptions set forth in Section 547(c) of the Bankruptcy Code would be applicable here (unless, again, the Rejection Order is to be regarded as a new lease or a lease extension) and, as such, there is no "to the extent" limitation on the avoidance.

### d. If the Rejection Order is Not Avoidable, Jumbo Seafood Entered Into a New Lease

The Trustee has indicated that he "does not concede that all these payments constituted rent." Motion, DE #24, at ¶ 10. The foregoing analysis of an action to avoid the Rejection Order assumes the propriety of the Trustee's position: monies paid to the Trustee, after rejection of the lease, could not have constituted new rent or contemporaneous rent because there was no lease pursuant to which rent could then be paid. If, however, the Trustee does wish to classify these payments as being new rent, then the Trustee would likely succeed in the currently-pending avoidance action, as the payment of new rent would have been part of a "substantially contemporaneous exchange," 11 U.S.C. § 547(c)(1)(B), and the provision of a new lease would have offered Jumbo Seafood "new value," 11 U.S.C. § 547(c)(1)(A).

If, however, the Rejection Order is to be regarded as the governing lease document calling for the payment of new rent, the correlative lease may be understood to be expired but not terminated. *See In re Consol. Med. Transp., Inc.*, 300 B.R. 435, 451 (Bankr. N.D. Ill. 2003)

(applying analogous Illinois law and observing "a tenant continues to have some interest in a lease well beyond the term expiration date"). The Bankruptcy Code, in turn, does not permit a trustee to reject a post-petition lease. *See In re Airport Executive Ctr., Ltd*., 138 B.R. 628, 629 (Bankr. M.D. Fla. 1992). And District of Columbia law requires an action for ejectment be brought – in the Superior Court – to obtain possession of premises subject to an expired (but not terminated) lease. D.C. Code § 42-3210; *Mendes v. Johnson*, 389 A.2d 781, 787 (D.C. 1978) ("We therefore conclude and hold that in this jurisdiction, the landlord's common law right of self-help has been abrogated, and the legislatively created remedies for reacquiring possession are exclusive."), *rev'd on other grounds* by *Davis v. Moore*, 772 A.2d 204 (D.C. 2001).

### e.  The Debtor Does Not Oppose the Making of Adequate Protection Payments

Jumbo Seafood does not propose to occupy the Property for free, nor does Jumbo Seafood have any interest in promoting such a concept. The Debtor is party to a long-term lease for the space, the rejection of which may well be avoidable in nature. While this issue is sorted out, and while the Trustee seeks to execute his fiduciary duties in connection with the Property, Jumbo Seafood proposes ongoing maintenance of the Automatic Stay be conditioned upon two critical terms: (i) Jumbo Seafood continue to remit to the Trustee the sum of $10,000.00 per month, each month, commencing on the date on which an adequate protection order is entered (and catching up such monthly payments to the date of Jumbo Seafood's bankruptcy petition); and (ii) Jumbo Seafood continue to permit the Trustee to show the Property to potential suitors during non-dining hours.

Familiarly, the Bankruptcy Code provides that in lieu of being terminated, annulled or modified, the Automatic Stay may be subject to "conditioning" upon the provision of adequate protection. 11 U.S.C. § 362(d). Specifically:

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by--
> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property…

11 U.S.C. § 361.

As observed by the United States District Court for the District of New Jersey, ". . . the legislature expressly intended to give the courts great flexibility in formulating methods of protection appropriate to the circumstances of each case." *In re Cardell, Inc.*, 2009 WL 1973551, at *3 (D. N.J. 2009) (quoting *In re Crockett*, 3 B.R. 365, 368 (Bankr. N.D. Ill. 1980)). *See also In re Franklin Equip. Co*., 416 B.R. 483, 522–23 (Bankr. E.D. Va. 2009) ("While 'adequate protection' is not defined by the Bankruptcy Code, whether a particular secured creditor is adequately protected is a determination to be made on a case-by-case basis and is within the discretion of the Court.") (citing *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citing *In re O'Connor*, 808 F.2d 1393, 1397 (10th Cir. 1987))).

Jumbo Seafood has reserved monies, post-petition, to continue paying the Trustee the sum of $10,000.00 each month. The only reason such payments have not yet been made is because there is no adequate protection order in place and the Trustee has asserted the Debtor's lease to be terminated. Jumbo Seafood believes this is an appropriate adequate protection sum, being in line with the entity's history of dealings with the Trustee.

The Debtor has also agreed with the Trustee, informally, to allow the Property to be shown to prospective purchasers and financiers during non-dining hours. While Jumbo Seafood understandably wishes to avoid the specter of speculative investors kicking the proverbial tires while patrons are filling the dining room, the Debtor has also made clear that nearly the entirety of each morning can be used for showings without issue and the Debtor's chief restructuring officer

will be happy to facilitate such showings. Jumbo Seafood openly aims to ultimately coordinate with a third party (whether an insider or otherwise) to acquire the Property from the Trustee and enter into a new lease, but Jumbo Seafood also appreciates and respects that the Trustee will sell the asset to whoever makes the highest and best offer. The Debtor supports cementing this informal arrangement through an adequate protection order.

### f.   Neither *In Rem* Relief nor an Equitable Servitude are Appropriate

### i.   The Debtor Seeks to Reorganize in Good Faith

Jarringly, the Trustee asserts this case is part of "a scheme to delay, hinder, or defraud creditors" through either (i) an extrajudicial transfer of real property, or (ii) serial bankruptcy filings. Motion at ¶ 26 (quoting 11 U.S.C. § 362(d)(4)). Such is manifestly not the case, as not only is Jumbo Seafood's bankruptcy a legitimate exercise in good faith reorganizational efforts but, equally, the provisions of this section of the Bankruptcy Code are plainly inapplicable.

The first legal problem with this contention is that the cited statutory language is only available to "a creditor whose **claim** is secured by an interest in such real property. . ." *Id.* (emphasis added). The Trustee is not a secured creditor. There is no known UCC filing in favor of the Trustee, the Trustee has not claimed to hold a common law lien of any variety, and no aspect of either lease (the one preceding the Landlord's bankruptcy filing or the Rejection Order) purports to serve as a security agreement.

The second legal problem is that even if the Trustee were a secured creditor, there is no allegation of Jumbo Seafood "transfer[ing] . . . all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval." 11 U.S.C. § 362(d)(4)(A). The Debtor has not tried to sell the Property or even to sublet the Property. All the Debtor has done is use the Property, which Jumbo Seafood has occupied for decades on end.

18

The third legal problem is that Jumbo Seafood has not utilized "multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4)(B). The Debtor has sought bankruptcy protection precisely once in the whole of its storied existence, and that petition for relief is what invited the above-captioned case. Jumbo Seafood is not a serial filer. In fact, Jumbo Seafood is so new to the world of bankruptcy that, as of the filing of this brief, the entity has never even attended a meeting of creditors.

Yet there is, too, a factual problem that ought not be overlooked: this case is not part of a "scheme to delay, hinder, or defraud creditors." 11 U.S.C. § 362(d)(4). Jumbo Seafood is genuinely committed to reorganizing through the Chapter 11 process. While this case may be only weeks old, the Debtor has already docketed (and argued) first day motions, opened a debtor-in-possession bank account, entered into negotiations with potential third-party financiers, sought to employ the services of a reputable chief restructuring officer, filed complete schedules, docketed an adversary proceeding, and shown every possible indicium of a good faith commitment to reorganizing. These are not the actions of a scheming underground operation that seeks to abuse the privileges of bankruptcy; these are the actions of a venerable Washington institution that wishes only to use the tools of the Bankruptcy Code to successfully reorganize.

### ii.  An Equitable Servitude is Inappropriate in this Case

Just north of the city's border, equitable servitudes became chic in the late 1990s, when Judge Mannes adopted the doctrine and declared, *inter alia*:

> Whether what the court imposes is called an equitable servitude, a covenant running with the land, or a restraint on alienation, the result will be the same—the prohibition of any bankruptcy filing, voluntary or involuntary, that will impose the automatic stay an eighth time as to the subject real property.

*In re Yimam*, 214 B.R. 463, 466 (Bankr. D. Md. 1997). The doctrine was borrowed from the Central District of California, *Id.* at 466, and has been utilized by the United States Bankruptcy

Court for the District of Maryland at least a dozen times, including – most recently – in the matter of *In re Kelly*, a voluminous opinion addressing the titular debtor and her husband, Gregory Myers, who ". . . [f]or eight years . . . have exploited, manipulated, and abused the bankruptcy process. . ." *In re Kelly*, 656 B.R. 541, 549 (Bankr. D. Md. 2023).

Equitable servitudes have been less common in this Honorable Court, appearing in only three reported and unreported memorandum opinions available on Westlaw, none of which substantively discuss or formally adopt the doctrine. The most recent case involved a multitude of badges of bad faith and the sanctioning of the debtor's counsel when prior bankruptcy filings were undisclosed. *In re Easley*, 2022 WL 965286 (Bankr. D.D.C. Mar. 30, 2022). The next-most-recent case involved a debtor who had "filed numerous bankruptcy petitions in recent years" while "engaging in a blatant form of 'tag bankruptcy.'" *In re Toggas*, 2019 WL 7172878, at *2 (Bankr. D.D.C. Dec. 23, 2019). The first order for entry of an equitable servitude in this Honorable Court involved "the sixth bankruptcy case commenced by the debtor or his co-defendant within three years." *In re Chappelle*, 2000 WL 33529767, at *1 (Bankr. D.D.C. Feb. 27, 2000).

Since none of the cases in this district address the standard for imposition of an equitable servitude, or formally adopt the doctrine, there is no readily-applicable test to be applied herein. But it is difficult to miss that each such case involved a serial debtor, just as the Maryland cases do, too, involve debtors with a quantity of PACER search results matching those of young attorneys. Undersigned counsel is not aware of any precedent for an equitable servitude ever being imposed on the assets of a first-time debtor, nor is it even clear that an equitable servitude has been imposed on a debtor whose assets do not include the fee simple ownership (or co-ownership) of real property.

At core, this is simply not a case for which an equitable servitude is even vaguely appropriate to consider, much less grant. In the preceding 40 years, the Debtor has been in bankruptcy for a grand total of two weeks, all of which stem from the instant case. Jumbo Seafood is not a serial filer or a bad faith litigant; the Debtor is a revered restaurant that just wants to find a way to stay open. Such is not cause for condemnation and the affixing of a scarlet letter; such is the reason Chapter 11 exists in the first place.

**III.    Conclusion**

WHEREFORE, the Debtor respectfully prays this Honorable Court (i) deny the Motion; and (ii) afford such other and further relief as may be just and proper.

Respectfully submitted,

Dated: April 9, 2024          By:    /s/ Maurice B. VerStandig
                                     Maurice B. VerStandig, Esq.
                                     Bar No. MD18071
                                     The Belmont Firm
                                     1050 Connecticut Avenue, NW
                                     Suite 500
                                     Washington, DC 20036
                                     Phone: (202) 991-1101
                                     mac@dcbankruptcy.com
                                     *Proposed Counsel for the Debtor*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of April, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig