Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-90-ELG |
| | ) | (Chapter 11) |
| JUMBO SEAFOOD RESTAURANT, INC. | ) | |
| | ) | |
| Debtor. | ) | |

**REPORT PURSUANT TO 11 U.S.C. § 1188(c)**

Comes now Jumbo Seafood Restaurant, Inc. (the "Debtor" or "Jumbo Seafood"), pursuant to Section 1188(c) of Title 11 of the United States Code, and reports as follows:

## I.  Introduction

In six days, Wendell Webster (the "Chapter 7 Trustee") is going to sell the building that has housed Jumbo Seafood since before most (if not all) of the lawyers in the room were born. If the auction goes as the Debtor hopes, there will be a light at the end of a tunnel of hard reorganizational work. If the auction does not go as the Debtor hopes, the light at the end of the tunnel will be an oncoming train.

Trying to handicap the likelihood of a consensual plan being confirmed, before the May 15 auction, would require placing slightly too much faith in the wisdom of the Debtor's fortune cookies. But there are clearly two routes this case can travel – one promising and complex, one tragic and simple – and each certainly merits some attention.

If the Debtor's storied building falls into friendly hands, a new long-term lease can be negotiated and a serious plan of reorganization can be docketed. Jumbo Seafood will need to undertake negotiations with the District of Columbia, which holds an outsized tax claim, to make a plan viable – absent some agreement from the city, the Debtor does not feign an ability to retire priority tax debt in a five year time horizon. But the other debt-centric obligations of this case will otherwise likely fall into place without much complexity or ado; Jumbo Seafood's secured obligations are minimal and the overwhelming majority of unsecured obligations are guarantees on debt facilities that will likely be satisfied by auction proceeds and/or the sale of the cross-collateralized assets of insider third parties.

If the Debtor's longtime home is lost to a speculative developer interested in building overpriced condominium units in the heart of Chinatown, a storied part of the city's history will fall with the auctioneer's gavel. While Jumbo Seafood can – and will – explore relocation in such an eventuality, there is also little reason to believe the Debtor's equity interests would be interested in carrying on at a new locale for the benefit of old creditors. Far more likely is a scenario where a Section 363 sale is followed by the conversion or dismissal of this case, permitting a new (even if seemingly relocated) restaurant to open its doors without the crushing onus of several years of plan payments laying ahead.

## II.     Efforts Toward a Consensual Plan

Notwithstanding the seismic uncertainty ahead, this case has not been without a healthy modicum of activity since being filed some 43 days ago. Between the time of entry of the order for relief, and the present, Jumbo Seafood has (i) moved to employ a chief restructuring officer; (ii) defended a motion for relief from the automatic stay; (iii) filed an adversary proceeding against the Chapter 7 Trustee, seeking to avoid an order of this Honorable Court; (iv) worked with

2

financiers to endeavor to secure a friendly purchaser for the aforementioned property; (v) opened a DIP account only to have the funds frozen because the depository institution believes such to be the appropriate course of action when DIP account holders are debtors in bankruptcy with unpaid pre-petition tax obligations;[1] (vi) settled the stay relief motion and adversary proceeding; (vii) all-but-settled issues surrounding the chief restructuring officer's appointment; (viii) attended the meeting of creditors; (ix) engaged in substantive discussions with multiple creditors and parties in interest; (x) continued to serve unparallelled food to the District of Columbia community; and (xi) informally lobbied for the application of municipal funds to the betterment of Chinatown. So, by just about any measure, it has been a particularly busy case – especially by Subchapter V standards.

The extent to which all of the foregoing may be considered efforts toward a consensual plan is subjective. Jumbo Seafood has greatly and sincerely worked to foster goodwill with various parties in interest, and looked to pave a route forward for the business that, in turn, will allow meaningful payments to be made to creditors. But discussions of an actual plan of reorganization have been minimal thus far, with focus being directed toward the real estate auction that will dictate so much and that has (rightfully) consumed so much attention.

Should the property fall into friendly hands, a plan will soon thereafter commence being sketched out, with more substantive plan-centric negotiations being undertaken. The sales price will, quite genuinely, matter; if the property is purchased by an entity looking to enter into a new lease with Jumbo Seafood, at a sum sufficient to retire a large chunk of the debt guaranteed by Jumbo Seafood, negotiations will likely prove easier. But the Debtor truly will not know the extent

---

[1] It bears notation that this is not a typographical error. The Debtor's DIP account was frozen because the Debtor is in bankruptcy. *See also* Lewis Carroll, *Through the Looking Glass: And What Alice Found There* 102-103 (Henry Altemus Company 1897) ("Why, sometimes I've believed as many as six impossible things before breakfast.").

of various claims, or the postures of correlative creditors, until an auction first dictates how much money will be paid on those jointly-obligated debts.

By the time the Section 1188 status conference is held in this matter, a great deal more will be known.

Respectfully submitted,

Dated: May 9, 2024    By:    /s/ Maurice B. VerStandig
Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of May, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

/s/ Maurice B. VerStandig
Maurice B. VerStandig