Maurice B. VerStandig, Esq.
Bar No. MD18071
The Belmont Firm
1050 Connecticut Avenue, NW
Suite 500
Washington, DC 20036
Phone: (202) 991-1101
mac@dcbankruptcy.com
*Counsel for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re: | ) | Case No. 24-90-ELG |
| | ) | (Chapter 11) |
| JUMBO SEAFOOD RESTAURANT, INC. | ) | |
| | ) | |
| Debtor. | ) | |

**OPPOSITION TO U.S. TRUSTEE'S MOTION
TO CONVERT OR DISMISS CHAPTER 11 CASE**

Comes now Jumbo Seafood Restaurant, Inc. (the "Debtor" or "Jumbo Seafood"), by and through undersigned counsel, and in opposition to the U.S. Trustee's Motion to Convert or Dismiss Chapter 11 Case (the "Motion," as found at DE #60, with the proponent thereof being known as the "US Trustee") states as follows:

**I.    Introduction**

Somewhere, likely buried in the least-trodden depths of Westlaw or LexisNexis, there assuredly exists a generalized description of a prototypical Chapter 11 case. That description very likely bears no cognizable resemblance to this case. Sure, each debtor comes with her, his or its own quirks, but some debtors arrive in bankruptcy triage more ramshackle than others. This Debtor has tended toward outlier status from the outset, posing unique, *sui generis* challenges.

None of the foregoing excuses certain tardy filings. Monthly operating reports ought to be punctual and, when they cannot be, motions to extend time exist for the same good cause upon

1

which they turn. Yet some—albeit not all—of the issues raised in the Motion correlate not to indifference or disregard but, rather, truly inane factual constructs. And those come well within the exceptive allowances of Section 1112 of Title 11 of the United States Code.

Equally, parts of the Motion are premised upon errant legal constructs. Yes, the Debtor has failed to do certain things, but some (again, not all) of those things are without any compulsory foundation. While prevailing practice may promote certain habits, such does not supplant the plain dictates, *vel non*, of Title 11 of the United States Code (the "Bankruptcy Code").

For these reasons, and in particular recognition of am eminently-confirmable plan of reorganization (the "Plan," as found at DE #61) now being on file, it is respectfully urged the Motion be denied without prejudice. Parties in interest—ranging from creditors, to the Chapter 7 trustee of a related case, to the Debtor itself—have traversed a great many obstacles to imbue this case with genuine viability; equity well dictates that the Plan ought to be considered on its merits.

**II.    Standard**

The Bankruptcy Code provides that matters under Chapter 11 may be converted or dismissed, after notice and a hearing, for "cause." 11 U.S.C. § 1112(b)(1). The same statutory provision then goes on to non-exhaustively delineate what may constitute such cause, including, *inter alia*:

> (F) unexcused failure to satisfy timely any filing or reporting requirement established by this title or by any rule applicable to a case under this chapter; . . .
> (H) failure timely to provide information or attend meetings reasonably requested by the United States trustee (or the bankruptcy administrator, if any). . .

11 U.S.C. § 1112(b)(4). "The list is illustrative, not exhaustive. Courts may find cause for other equitable reasons." *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012) (citing 11 U.S.C. § 1112(b)(4); *In re FRGR Managing Member LLC*, 419 B.R. 576, 582–83 (Bankr. S.D. N.Y. 2009)).

Once a creditor has filed a motion seeking conversion or dismissal and setting forth cause within the meaning of Section 1112(b)(4) of the Bankruptcy Code, the burden shifts to the Debtor to demonstrate the satisfaction of four criteria:

> The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that-- (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than under paragraph (4)(A)-- (i) for which there exists a reasonable justification for the act or omission; and (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2).

### III.   Relevant Facts

Jumbo Seafood believes the following facts, either supported by the record herein or to be supported by testimony at a hearing on the Motion, to be chiefly relevant:

1.   Jumbo Seafood did open a debtor-in-possession bank account (a "DIP Account") with TD Bank, only to have the DIP Account frozen because Jumbo Seafood is a debtor in bankruptcy. *See* Demand Letter, attached hereto as Exhibit A. The Debtor has since reverted to use of its pre-petition bank accounts at Wells Fargo, N.A., an institution insured by the Federal Deposit Insurance Corporation.

2.   The Debtor is, and at all times relevant has been, fully and properly insured; of even date herewith, a certificate of insurance—naming the US Trustee as a notice party—has been conveyed to the US Trustee. A certificate of insurance (not listing the US Trustee as a notice party) was previously conveyed to the US Trustee on May 6, 2024.

3.   An individual in New York—believed to be either an accountant or bookkeeper—has long maintained the books and records of Jumbo Seafood and, concurrent with the filing of

3

this case, indicated that he would furnish various financial documents typical of a small business. He has, at all times since, and notwithstanding repeated requests, failed to do so. *See* Declaration Pursuant to 11 U.S.C. § 1187(c), DE #65.

4. While Jumbo Seafood was delinquent in filing certain monthly operating reports, the Debtor has now caught up on each filing and, concurrent with this filing, is supplementing the April 2024 report to include bank statements. *See* DE #54; DE #55; DE #64.

5. The Plan was timely filed in this case. DE #61.

## IV.  Argument: The Motion Should be Denied

### a.  Deficiencies Have Been Cured

As discussed *infra*, Jumbo Seafood maintains the various ills alleged by the US Trustee do not actually constitute "cause" under Section 1112. It bears notation, however, that the Debtor has been late filing its monthly operating reports. The US Trustee does not point to tardiness as a ground upon which this case should be dismissed or converted (and, indeed, all reports then-due had been filed prior to the Motion). But Jumbo Seafood appreciates that it has been late docketing these reports and, equally, that such cannot persist into the future.

Equally, while Jumbo Seafood discusses herein the various reasons that much of what is suggested as "cause" does not, in fact, equate to "cause," such does not mean the Debtor cannot do better in the future. Just because something is not required does not mean something is not prudently undertaken. The US Trustee plays a vital role in the administration of the bankruptcy system—especially in Chapter 11 cases—and Jumbo Seafood is eager to earn the good graces of the US Trustee and remain therein for the duration of this case.

As noted *supra*, a certificate of insurance, listing the US Trustee as a notice party, has now been conveyed. Moreover, bank statements have now been docketed, DE #66, and an inventory of

assets was included in the Debtor's schedules at the outset of this case, DE #16 at pp. 5-10. Equally, a declaration, explaining the highly unusual circumstances encompassing the Debtor's financial reports (or lack thereof) has now been docketed. DE #65. And to whatever extent the belated docketing of that report might constitute "cause" within the realm of Section 1112 (which Jumbo Seafood does not believe to be the case), it is respectfully suggested the issues with the bookkeeper/accountant more than suffice for demonstrating "reasonable justification." 11 U.S.C. § 1112(b)(2)(B)(i).

### b. The Motion Suggests Rigors That Are Not Requirements

There is—and seemingly always has been—a Venn diagram of what the Bankruptcy Code requires of debtors and what the US Trustee asks of debtors. While a great deal of material falls in the common circle in the middle of that Venn diagram, so, too, does some matter falls outside the reaches of the Bankruptcy Code (and the Federal Rules of Bankruptcy Procedure). Three of the issues highlighted in the Motion are firmly within this grouping, being regularly requested by the US Truste but not actually required by governing law.

As the Supreme Court of the United States observed, less than a week ago, it is the province of courts—and not executive agencies—to construe the rigors flowing from statutes of Congress and the impositions on the citizenry occasioned thereby:

> . . . delegating ultimate interpretive authority to agencies is simply not necessary to ensure that the resolution of statutory ambiguities is well informed by subject matter expertise. The better presumption is therefore that Congress expects courts to do their ordinary job of interpreting statutes, with due respect for the views of the Executive Branch. And to the extent that Congress and the Executive Branch may disagree with how the courts have performed that job in a particular case, they are of course always free to act by revising the statute.

*Loper Bright Enterprises v. Raimondo*, No. 22-1219, 2024 WL 3208360, at *17 (U.S. June 28, 2024).

### i. DIP Accounts

DIP Accounts serve a valuable purpose. And, as discussed above, the Debtor in this case actually opened one such account, only to have its monies frozen by the bank supposedly participating in the US Trustee's program. But DIP Accounts are not a thing of necessity for debtors whose depository accounts loiter below the $250,000 threshold, so long as such accounts are at properly insured financial institutions.

The Bankruptcy Code does not actually mandate that debtors open new bank accounts upon filing petitions for relief, instead requiring only:

> **Except with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States** or backed by the full faith and credit of the United States, the trustee shall require from an entity with which such money is deposited or invested—
>
> (1) a bond—
>
> (A) in favor of the United States;
>
> (B) secured by the undertaking of a corporate surety approved by the United States trustee for the district in which the case is pending; and
>
> (C) conditioned on—
>
> (i) a proper accounting for all money so deposited or invested and for any return on such money;
>
> (ii) prompt repayment of such money and return; and
>
> (iii) faithful performance of duties as a depository; or
>
> (2) the deposit of securities of the kind specified in section 9303 of title 31;
>
> unless the court for cause orders otherwise…

11 U.S.C. § 345(b) (emphasis added).

The UST Guidelines, however, go a step further, suggesting, *inter alia*, "[t]he debtor must immediately close pre petition bank accounts and open new 'debtor in possession' bank accounts.

6

All receipts must flow through the debtor in possession account(s). All disbursements should be by check." UST Guidelines, p. 3, § II(A)(1).

Under Section 345 of the Bankruptcy Code, a regime is created through which DIP Accounts can be established at banks that post the requisite bond and agree to participate in the subject program. The regime, however, is plainly only applicable "[e]xcept with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States…" 11 U.S.C. § 345(b). And where the FDIC insures a bank, the institution may be understood to have the protections of "a department, agency, or instrumentality of the United States." *See, e.g.*, 12 U.S.C. § 1811(a) ("There is hereby established a Federal Deposit Insurance Corporation … which shall insure, as hereinafter provided, the deposits of all banks and savings associations which are entitled to the benefits of insurance under this chapter, and which shall have the powers hereinafter granted").

The current extent of FDIC insurance on each deposit is $250,000. 12 U.S.C. § 1821(a)(1)(E). And there should be no dispute but that Jumbo Seafood has never had anywhere close to $250,000 in any bank account during the pendency of this case (if ever).

There is thusly a construct where the Bankruptcy Code is express in what is required: debtors must use government-insured accounts. Yet the US Trustee goes a step further, seeking to require DIP Accounts be opened and, with such, evidence provided of the closure of pre-petition accounts. But the UST Guidelines are not law; they are an advisory treatise. And even if they were to be construed as regulations (which is an enormously problematic construct, insofar as the UST Guidelines do not nearly feign compliance with the Administrative Procedure Act or the processes mandated thereunder), the Supreme Court in *Loper Bright Enterprises* makes manifest that such regulations cannot conflict with the plain meaning of Congress' statutory scheme.

7

If Congress wanted to require DIP Accounts, Congress very well could do so. But the legislative branch has not embarked upon such an expedition and, as such, it is respectfully urged this Honorable Court ought not read a correlative requirement into statutory language that stops at the point of requiring accounts be appropriately insured by the government.

### ii. Bank Statements Appended to Operating Reports

Similarly, it is often sensible to append bank statements to monthly operating reports. Indeed, Jumbo Seafood has now done so. But that does not mean this rigor is actually a requirement found anywhere in the Bankruptcy Code or the rules promulgated thereunder. And a failure to abide by this rigor accordingly seems well outside the narrow scope of what may constitute "cause" under Section 1112.

The Federal Rules of Bankruptcy Procedure require, *inter alia*, "in a chapter 11 small business case, unless the court, for cause, sets another reporting interval, [a debtor in possession shall] file and transmit to the United States trustee for each calendar month after the order for relief, on the appropriate Official Form, the report required by §308." Fed. R. Bankr. P. 2015(a)(6) (interlineating language from subsection (a) to render the clause contextually readable).

The pertinent question accordingly becomes one of defining "the report required by §308." And the relevant statutory provision, in turn, requires:

> A debtor in a small business case shall file periodic financial and other reports containing information including—
>
> (1) the debtor's profitability;
>
> (2) reasonable approximations of the debtor's projected cash receipts and cash disbursements over a reasonable period;
>
> (3) comparisons of actual cash receipts and disbursements with projections in prior reports;
>
> (4) whether the debtor is—

8

> (A) in compliance in all material respects with postpetition requirements imposed by this title and the Federal Rules of Bankruptcy Procedure; and
>
> (B) timely filing tax returns and other required government filings and paying taxes and other administrative expenses when due;
>
> (5) if the debtor is not in compliance with the requirements referred to in paragraph (4)(A) or filing tax returns and other required government filings and making the payments referred to in paragraph (4)(B), what the failures are and how, at what cost, and when the debtor intends to remedy such failures; and
>
> (6) such other matters as are in the best interests of the debtor and creditors, and in the public interest in fair and efficient procedures under chapter 11 of this title.

11 U.S.C. § 308(b).

All of the information identified in Section 308 is set forth on the face of the form completed by the Debtor for each of the months Jumbo Seafood has been in bankruptcy. Profitability is highlighted on line 22. An approximation of projected cash receipts and cash disbursements is set forth on lines 32 and 33. A comparison of performance versus projections is also set forth on lines 32 and 33. And compliance with post-petition obligations is ascertained through lines 1-18 (with the same lines also including certain things that, as noted *passim*, are not actual obligations).

Does it make sense for a debtor to attach bank statements? Very often, yes. But is that required by Section 308 and, by extension, Rule 2015 (incorporated Section 308)? No.

Again, if Congress wanted to mandate the appendage of bank statements, Congress very well could have written such into Section 308. But Congress did not. And the law accordingly instructs that no such requirement should be deemed to exist, especially in the prism of Section 1112 where the foundation of "cause" is rather specific in nature.

### iii.  Naming the US Trustee as a Notice Party

The US Trustee's requirement that debtors name the office as a notice party on policies of insurance is equally outside the confines of the Bankruptcy Code. Nowhere does the statutory

scheme appear to contain any such mandate. And, to the contrary, the Bankruptcy Code is actually quite express about the insurance-centric rigors of a debtor-in-possession, imposing a standard well shy of that suggested in the Motion.

Section 1112 itself spells out the pertinent standard: a debtor in possession that does not "maintain appropriate insurance that poses a risk to the estate or to the public" may see its case dismissed or converted. 11 U.S.C. § 1112(b)(4)(C).

There is no allegation that Jumbo Seafood has lacked appropriate insurance—much less that the Debtor's absence of insurance has posed a risk to the public or the estate. To the contrary, a certificate of insurance was transmitted to the US Trustee nearly two months ago.

Again, it is often sensible to nonetheless name the US Trustee as a notice party. And Jumbo Seafood has now done so. But in the absence of a statutory requirement, it is difficult to reconcile this temporary failure with "cause" under Section 1112. Conversion and dismissal are weighty matters, carefully pinned to objective standards; a failure outside those objective standards assuredly cannot give rise to the harshest impositions of Section 1112.

## V.     Conclusion

WHEREFORE, Jumbo Seafood respectfully prays this Honorable Court (i) deny the Motion without prejudice; or, alternatively, (ii) defer consideration of the Motion until after a hearing on confirmation of the Plan; and (iii) afford such other and further relief as may be just and proper.

*[Signature on Following Page]*

                                            Respectfully submitted,

Dated: July 3, 2024        By:    /s/ Maurice B. VerStandig
                                          Maurice B. VerStandig, Esq.
                                          Bar No. MD18071
                                          The Belmont Firm
                                          1050 Connecticut Avenue, NW
                                          Suite 500
                                          Washington, DC 20036
                                          Phone: (202) 991-1101
                                          mac@dcbankruptcy.com
                                          *Counsel for the Debtor*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 3rd day of July, 2024, a copy of the foregoing was served electronically upon filing via the ECF system, with copies being sent to all parties receiving electronic notice herein.

                                            /s/ Maurice B. VerStandig
                                            Maurice B. VerStandig